930 F.2d 922
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alex GARCIA, aka Alejando Garcia, Defendant-Appellant.
 No. 90-3186.
 United States Court of Appeals, Tenth Circuit.
 April 12, 1991.
 
 Before JOHN P. MOORE, ALDISERT,* and McWILLIAMS, Circuit Judges.
 ORDER AND JUDGMENT**
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 The single question for decision in this appeal is whether the district court's upward departure in sentencing Alex Garcia was reasonable. We hold that the circumstances relied upon by the district court were significant, beyond those contemplated by the Guidelines, and the departure was reasonable.
 
 
 2
 In a two-count indictment, Alex Garcia was charged with violations of 18 U.S.C. Sec. 1001 and Sec. 2 for preparing false immigration documents for two individuals, who were then qualified as special agricultural workers eligible to receive work permits under the Immigration and Naturalization Amnesty Program. Mr. Garcia pled guilty to the offense. The Presentence Report described how undercover agents contacted Mr. Garcia who readily agreed to prepare the documents for a fee of $560. Information obtained from the INS described the extent of Mr. Garcia's activities which included ten to fifteen individuals who assisted him. At least one, Gerry Cherry, started his own operation after learning the procedure from Mr. Garcia. Although Mr. Garcia admitted creating about 100 documents, the government was prepared to prove over 500 names for which false papers had been submitted. The Sentencing Recommendation indicated that during a seven-month period Mr. Garcia received at least $120,000 for his services, a conservative estimate given the number of applications processed. Moreover, the Sentencing Recommendation stated that the damage to the government as a consequence of this illegal activity was incalculable, requiring perhaps "overwhelming" financial resources and time. Based on the Guideline range of eighteen to twenty-four months, the PSR recommended a tentative sentence of sixty months.
 
 
 3
 During the subsequent sentencing hearing, Mr. Garcia urged a reduction in his sentence because of his willingness to cooperate with authorities and his acceptance of responsibility for his conduct. Nevertheless, predicated on the court's view that "this is not just an ordinary Sec. 1001 case," the court imposed sentence of thirty-six months on count one, followed by a term of three years of supervised release, and thirty-six months on count two, followed by three years of supervised release, the two sentences to run concurrently. The court reserved judgment on the government's proposal to enhance the sentence to the upper limit of five years. The district court ordered Mr. Garcia to serve his term at the United States Medical Facility in Springfield, Missouri.[1]
 
 
 4
 In a subsequent memorandum setting forth the reasons for its sentence under 18 U.S.C. Sec. 3553(c), the district court first stated that Mr. Garcia's leadership was significant, employing "between ten and fifteen people." In addition, another person "charged and sentenced in a companion case, started his own operation after learning from the defendant how to falsify the documents." Second, the court believed Mr. Garcia's illegal conduct caused "significant disruption of a governmental function." Because administrative action was no longer available, the government's only recourse was to institute individual criminal prosecutions, a costly and ultimately impractical solution, the district court observed. Finally, the court stated that Mr. Garcia earned substantial sums of money, perhaps as much as $200,000, during a time when he also received welfare payments.
 
 
 5
 All of these circumstances, the district court concluded, were not adequately considered in formulating the Guidelines. Consequently, their presence in fact in this case merited the upward departure from twenty-four months to thirty-six months.
 
 
 6
 Despite Mr. Garcia's arguments to the contrary,[3] we are satisfied that the district court properly explained why the Guidelines sentence was inadequate; identified the specific factual basis for the departure; and established why the exact degree of departure was reasonable. United States v. Jackson, 921 F.2d 985, 989 (10th Cir.1990); United States v. White, 893 F.2d 276, 278 (10th Cir.1990). Given the government's proposal of a five-year sentence, the district court's twelve-month upward departure resulting in a thirty-six month sentence was fully established by the record and reasonable.
 
 
 7
 AFFIRMED.
 
 
 
 *
 Honorable Ruggero J. Aldisert, United States Senior Circuit Judge for the Third Circuit Court of Appeals, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The PSR indicated that Mr. Garcia suffers from diabetes and high blood pressure
 
 
 [3]
 For example, Mr. Garcia contends the PSR already had added four points for his role in the offense. Nevertheless, the court's upward departure was based on Mr. Garcia's "unusual" role, well beyond that of a ringleader in its effect and operation